UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SABAH AKAR, SAWUSAN I. AKAR, ) | | |
| T.F., a minor child by her mother and next ) | | |
| Friend SAWUSAN I. AKAR, N.F., a minor ) | | |
| child by her mother and next friend, ) | | |
| SAWUSAN I. AKAR, ) | | |
| ) | | |
| Plaintiffs, ) | | CIVIL ACTION |
| v. ) | | NO. 10-10539-NMG |
| ) | | |
| FEDERAL NATIONAL MORTGAGE ) | | |
| ASSOCIATION a/k/a FANNIE MAE, ) | | |
| WELLS FARGO BANK, N.A., HARMON ) | | |
| LAW OFFICES, P.C., NORTHEAST ) | | |
| ABSTRACT SERVICES, INC. and ) | | |
| HAMMOND RESIDENTIAL REAL ) | | |
| ESTATE, LLC, ) | | |
| ) | | |
| Defendants. ) | | |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

November 16, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiffs, Sabah Akar ("Akar"), her daughter Sawusan I. Akar, and two of

Sawusan Akar's minor children, through their mother and next friend, have brought this

action to set aside the foreclosure sale of Akar's home on February 10, 2009, to enjoin

the present owner from evicting them or charging them for use of the home, and to obtain

damages for injuries suffered in connection with the foreclosure. The plaintiffs allege

that the foreclosure was carried out by defendant Wells Fargo Bank, N.A. ("Wells

Fargo"), with assistance from its counsel, defendant Harmon Law Offices, P.C. ("Harmon"), and Harmon's affiliate, defendant Northeast Abstract Services, Inc. ("Northeast Abstract"). The plaintiffs also allege that following the foreclosure, ownership of the property was transferred to defendant Federal National Mortgage Association a/k/a Fannie Mae or FNMA ("Fannie Mae"), which retained defendant Hammond Residential Real Estate, LLC ("Hammond") to act as its property manager and marketing agent.

At the heart of the plaintiffs' claims are their allegations that the foreclosure sale was unlawful because Wells Fargo was not the holder of the mortgage at the time it initiated the foreclosure proceedings, and their allegations that Wells Fargo failed to honor its repeated promises not to foreclose while Akar's application for a loan modification remained pending. By their Second Amended Verified Complaint, the plaintiffs have asserted thirteen causes of action, which consist of claims for violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (Count I), violation of the Fair Debt Collection Practices Act (Count II), wrongful foreclosure (Counts III, IV and VII), breach of contract (Count V), promissory estoppel (Count VI), intentional and negligent misrepresentation (Counts VIII and IX), assault and battery (Count IX),[1] trespass (Count

---

[1] Both the plaintiffs' claim against Wells Fargo for negligent misrepresentation and the their claim against Hammond for assault and battery are labeled Count IX. The pending motions address only the claim against Wells Fargo.

X), intentional infliction of emotional distress (Count XI), and unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A (Count XII).

The matter is presently before the court on "Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings" (Docket No. 38) and "Federal National Mortgage Association a/k/a Fannie Mae's Motion for Judgment on the Pleadings" (Docket No. 40), by which Wells Fargo and Fannie Mae are seeking judgment in their favor, pursuant to Fed. R. Civ. P. 12(c), with respect to each of the claims asserted against them.[2]  For all of the reasons described below, this court recommends to the District Judge to whom this case is assigned that Fannie Mae's motion be ALLOWED, and that all of the Counts against Fannie Mae be dismissed.  This court also recommends that Wells Fargo's motion be ALLOWED IN PART and DENIED IN PART.  Specifically, this court recommends that Counts I, III, IV and X against Wells Fargo be dismissed, but that Wells Fargo's motion be denied with respect to Counts V, VI, VII, VIII, IX, XI and XII.

## II.  <u>STATEMENT OF FACTS</u>

When ruling on a motion for judgment on the pleadings, the court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion – here, the plaintiff[s] – and draw all reasonable inferences in the plaintiff[s'] favor."  <u>Curran v. Cousins</u>, 509 F.3d 36, 43 (1st Cir. 2007).  In doing so, the court "may

---

[2]  Harmon and Northeast Abstract have filed a motion to dismiss all of the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).  This court will address that motion in a separate Report and Recommendation.

consider 'documents the authenticity of which are not disputed by the parties; . . .

documents central to plaintiffs' claim; [and] documents sufficiently referred to in the

complaint.'" Id. at 44 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993))

(punctuation and alteration in original). Applying this standard to the instant case, the

relevant facts are as follows.

### Akar's Purchase of the Property

Akar is a single woman over the age of 60 who has limited knowledge of the

English language. (Compl. ¶ 1).[3] In August 2006, she purchased a home in Stoughton,

Massachusetts (the "Property"), where she has continued to reside along with her

daughter, son-in-law, and five minor grandchildren. (Id. ¶¶ 1-2, 42). In connection with

the purchase of the Property, Akar obtained a loan from Pride Mortgage, LLP ("Pride").

(Id. ¶ 42). The principal amount of the loan was $300,000, and it had a fixed interest rate

of 7.75%. (Id.). The loan was evidenced by a note and secured by a mortgage, which

was signed by Akar. (See Compl., Ex. 2). According to the plaintiffs, Pride never

verified Akar's employment or income, and failed to determine whether she could afford

the Property. (Id. ¶ 42). Allegedly, the monthly mortgage payment, including taxes and

insurance, was over $3,400. (Id.).

---

[3] "Compl." refers to the plaintiffs' "Second Amended Verified Complaint and Demand for
Jury Trial" (Docket No. 33).

The mortgage identified Akar as the "Borrower," Pride as the "Lender," and Mortgage Electronic Registration Systems, Inc. ("MERS"),[4] "a separate corporation . . . acting solely as a nominee for Lender and Lender's successors and assigns" as the mortgagee. (Compl., Ex. 2 at p. 1). The mortgage also provided in relevant part that in the event of a default that is not cured within a specified time, the "Lender, at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." (Compl., Ex. 2 ¶ 22). The foreclosure giving rise to the plaintiffs' claims in this action occurred after Akar defaulted on her $300,000 loan and Wells Fargo invoked the statutory power of sale under the mortgage agreement.

The plaintiffs allege that Akar entered into a second mortgage loan with Pride, which consisted of an $80,000 equity line with a fixed interest rate of 12%, and a balloon

---

[4] "[T]he MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. Mortgage lenders and other entities, known as MERS members subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system. The initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage Electronic Registration Systems, Inc.' named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage." MERSCORP, Inc. v. Romaine, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268, 861, N.E.2d 81, 83 (2006) (footnotes omitted).

payment of $69,000 that was never disclosed by the lender.  (<u>Id.</u> ¶¶ 43-44).  Although the

foreclosure at issue in this case does not concern the second mortgage, the plaintiffs claim

that Pride never warned Akar about the true costs of the Property.  (<u>Id.</u> ¶ 43).  According

to the plaintiffs, the two mortgages together had a loan to value ratio of 95%, and they did

not qualify for private mortgage insurance that would have protected the lender.  (<u>Id.</u>).

However, the plaintiffs have not alleged that any of the defendants named in this action

were involved with the origination of the loans or had any relationship with Pride.

### Circumstances Leading up to Foreclosure of the Property

The plaintiffs allege that in the fall of 2006, shortly after Akar purchased the

Property, Akar was involved in an automobile accident that rendered her unable to work.

(<u>Id.</u> ¶ 65).  Akar did not receive disability insurance, and had no other source of income.

(<u>Id.</u>).  The plaintiffs claim that on about January 12, 2007, Akar received a notice stating

that Ohio Savings Bank had transferred the servicing of her loan to Wells Fargo Home

Mortgage.  (<u>Id.</u> ¶ 45).  The notice did not indicate whether ownership of the loan had

been transferred at that time as well.  (<u>Id.</u>).

On about April 22, 2008, Harmon allegedly sent a letter to Akar in which it

informed her that it had been retained by Wells Fargo to foreclose on the Property, and

that Wells Fargo was accelerating her loan.  (<u>Id.</u> ¶ 46; Def. Ans. ¶ 46).[5]  The plaintiffs

---

[5]  "Def. Ans." refers to the "Defendants Wells Fargo Bank, N.A. and Federal National
Mortgage Associations a/k/a Fannie Mae's Answer to Plaintiffs' Second Amended Complaint"
(Docket No. 36).

claim that at the time of the letter, both Wells Fargo and Harmon knew or should have known that there had been no valid assignment of the mortgage to Wells Fargo. (Compl. ¶ 46). Nevertheless, on about April 23, 2008, "Harmon or Northeast Abstract," acting on behalf of Wells Fargo, filed a Complaint to Foreclose Mortgage in the Massachusetts Land Court Department of the Trial Court for purposes of foreclosing on the Property. (Id. ¶ 47 and Ex. 3 thereto). The Land Court complaint was filed pursuant to the Servicemembers Civil Relief Act, and it provided that Wells Fargo was "the assignee and holder of a mortgage with the statutory power of sale given by Sabah Akar to [MERS] dated August 25, 2006[.]" (Compl., Ex. 3). However, the complaint contained no specific reference to an assignment of the mortgage to Wells Fargo. (Compl. ¶ 47 and Ex. 3 thereto). The plaintiffs allege that at the time Wells Fargo and Northeast Abstract filed the complaint with the Land Court, both defendants knew or should have known that there had been no valid assignment of the mortgage to Wells Fargo. (Compl. ¶ 49).

The plaintiffs claim that Akar attempted to obtain a temporary forbearance of her mortgage obligations from Wells Fargo so that she could pursue the sale of the Property, but the defendant rejected her request on the grounds that she had no income. (Id. ¶ 66). Allegedly, Wells Fargo also informed her that she did not qualify for any government assistance programs for the same reason. (Id.). Akar nevertheless listed the Property with a realtor in the hopes of achieving a short sale, and persisted in her efforts to seek an alternative payment arrangement from Wells Fargo. (Id. ¶ 67).

In July 2008, Akar allegedly contacted Wells Fargo and requested that it consider a moratorium or modification of her loan. (Id. ¶ 68). It is undisputed that no agreement was reached at that time. (See id.; Def. Ans. ¶ 68). Later that month, Akar allegedly received an offer to purchase the Property from an independent, pre-approved third party. (Compl. ¶¶ 69-70). Because the amount of the offer was less than the outstanding balance of the loan, Akar's counsel immediately submitted a short sale package to Wells Fargo for consideration. (See id.).

The plaintiffs claim that on August 7, 2008, Akar's attorney contacted a customer service representative at Wells Fargo to inquire about the status of the short sale package, and was informed that the documents had "not yet been posted." (Id. ¶ 71). Accordingly, Akar's counsel resubmitted the package that same day. (Id.). However, on August 13, 2008, Akar's attorney allegedly contacted Wells Fargo again to inquire about the short sale package, and was told by a second customer service representative that the documents still had not been posted. (Id. ¶ 72). According to the plaintiffs, Akar's attorney submitted the short sale package for a third time, and on August 15, 2008, a third customer service representative confirmed that Akar's paperwork had been received and an appraisal of the Property had been ordered. (Id. ¶¶ 72-74).

On August 22, 2008, while Akar was still awaiting a response regarding her short sale proposal, the Land Court issued a notice informing Akar of Wells Fargo's pending complaint in the Land Court. (See Compl., Ex. 4). The notice provided in relevant part that Wells Fargo, "claiming to be the holder of a Mortgage" covering the Property, had

filed a complaint for authority to foreclose on the mortgage, and that Akar had a right to object to such foreclosure if she was "entitled to benefits of the Servicemembers Civil Relief Act as amended[.]" (Id.). The plaintiffs allege that at the time the Land Court issued the notice, both Wells Fargo and Harmon knew or should have known that Wells Fargo had no valid assignment of the mortgage, and therefore lacked the legal authority to foreclose on the Property. (See id. ¶ 50).

Thereafter, on about September 18, 2008, Harmon sent Akar a "Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage" on behalf of Wells Fargo. (Id. ¶ 52 and Ex. 5 thereto). Therein, Harmon informed Akar of "the intention of Wells Fargo Bank, NA, on or after October 21, 2008, to foreclose by sale under power of sale for breach of conditions, the mortgage held by it" on the Property. (Compl., Ex. 5 at 2). Although Harmon stated that Wells Fargo was the present holder of the mortgage, it provided no specific reference to an assignment of the mortgage to Wells Fargo. (Compl. ¶ 52 and Ex. 5 thereto). It is undisputed that no foreclosure sale of the Property occurred on October 21, 2008. (See Compl.¶ 59; Def. Ans. ¶ 59).

It also is undisputed that on September 22, 2008, MERS assigned Akar's mortgage to Wells Fargo by executing an Assignment of Mortgage in favor of the defendant. (Compl. ¶ 63 and Ex. 9 thereto; see also Def. Ans. ¶ 63). The Assignment was recorded in the Norfolk County Registry of Deeds on September 24, 2008. (Compl., Ex. 9). It provided, among other things, that "[t]he effective date of this assignment is April 18, 2008." (Id.).

Allegedly, on October 3, 2008, Wells Fargo approved Akar's proposed short sale pending approval by the second mortgage lender. (Id. ¶ 77). The plaintiffs claim that by the time the second mortgage lender granted its approval in November 2008, the mortgage market had changed so dramatically that the potential buyer no longer qualified for a loan, and Akar was unable to sell the Property. (Id. ¶ 78). Thus, the plaintiffs suggest that Wells Fargo's delay in approving the short sale deprived Akar of an opportunity to avoid foreclosure.

On October 15, 2008, the Land Court rendered a judgment on Wells Fargo's Complaint to Foreclose Mortgage. (Compl., Ex. 3). Therein, the Land Court determined that Akar was not entitled to the benefits of the Servicemembers Civil Relief Act. (Id.). Accordingly, the Court ordered that Wells Fargo "be authorized and empowered to make an entry and to sell the property covered by the mortgage . . . in accordance with the powers contained in said mortgage." (Id.).

Akar allegedly submitted a new loan modification request to Wells Fargo on December 19, 2008. (Compl. ¶ 79). Following the submission, Akar's counsel made numerous calls to Wells Fargo to check on the status of the application. (Id. ¶ 80). According to the plaintiffs, Akar's counsel was told repeatedly that the file was under review, and that the reviewer was aware of the pending foreclosure. (Id. ¶ 80). Nevertheless, on about January 8, 2009, Harmon sent Akar a second "Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage" on behalf of Wells Fargo. (Id. ¶ 53 and Ex. 6 thereto). Therein, Harmon notified the plaintiff of

Wells Fargo's intent to foreclose on the Property on or after February 10, 2009. (Compl., Ex. 6 at 2). It also stated that Wells Fargo was the present holder of the mortgage, but provided no specific reference to the assignment of the mortgage to Wells Fargo. (Compl. ¶ 53 and Ex. 6 thereto). As detailed above, Wells Fargo had obtained an assignment of the mortgage from MERS by the time Harmon sent the second Notice to Akar in January 2009.

Harmon arranged for a Notice of Mortgagee's Sale of Real Estate to be published in the Stoughton Journal on January 16, 23 and 30, 2009. (Compl. ¶ 56 and Ex. 7 thereto). The Notice identified Wells Fargo as the holder of the mortgage for the Property, and provided that a public auction of the Property would take place on February 10, 2009 for the purpose of foreclosure. (Id.). The plaintiffs contend that as a result of the publication of the Notice in the newspaper, and the defendants' listing of the Property on a website of "bank-owned" property, numerous individuals entered the Property without permission, took photographs and peered into the windows of Akar's home. (Id. ¶¶ 174-76). They also allege that on more than one occasion, individuals rang the doorbell and asked to enter the home. (Id. ¶ 176).

Despite the scheduled foreclosure sale, Akar allegedly remained willing and able to make reasonable mortgage payments pursuant to a loan modification plan. (Id. ¶ 124). The plaintiffs claim that beginning in January 2009, Akar's counsel made regular telephone calls to Wells Fargo in order to follow up on Akar's application for a loan modification. (See id. ¶¶ 84, 121). They also allege that in response to these calls, Wells

Fargo representatives repeatedly assured Akar's counsel that the foreclosure sale would be postponed if the defendant had not acted upon the pending application. (Id.).

As of January 23, 2009, Akar's application for a loan modification remained under consideration by Wells Fargo. (See Compl. ¶ 57). However, on February 5, 2009, Akar's counsel allegedly contacted Wells Fargo, and was informed that the file had been closed because Akar had failed to respond to Wells Fargo's attempts to contact her. (Id. ¶ 82). The plaintiffs contend that Wells Fargo had made no effort to contact Akar's attorney even though all communications between the parties had occurred through plaintiff's counsel. (Id.). They further claim that Akar resubmitted her application for a loan modification on February 5, 2009, and was assured by Wells Fargo's representatives that it would be treated as a priority due to the impending foreclosure sale. (Id. ¶ 83). Moreover, according to the plaintiffs, the defendant's representatives continued to assure Akar that the foreclosure sale would be postponed if no decision had been made on her modification request. (Id. ¶¶ 84-85). Based on these assurances, Akar allegedly took no steps to pursue alternative ways to stop or delay the foreclosure, such as filing for bankruptcy protection. (Id. ¶ 85).

**The Foreclosure and its Aftermath**

Despite Wells Fargo's alleged representations, a foreclosure sale of the Property took place on February 10, 2009, pursuant to the statutory power of sale, even though Akar's application for a loan modification remained pending. (Id. ¶¶ 59, 84). The plaintiffs claim that Harmon was responsible for carrying out the sale on behalf of Wells

Fargo, and that Wells Fargo purchased the Property itself for $335,647.09, which was less than the fair market value of the Property. (Id. ¶¶ 59-60).

The plaintiffs also allege that in connection with the foreclosure sale, an agent of Wells Fargo entered the Property pursuant to a Certificate of Entry, but without permission from Akar. (Id. ¶¶ 61,177). Allegedly, the Certificate of Entry provided that Wells Fargo was the current holder of the mortgage for the Property, but made no reference to an assignment of the mortgage to Wells Fargo. (Id. ¶ 61). Notwithstanding their allegations regarding the assignment of the mortgage to Wells Fargo in September 2008, the plaintiffs contend that Wells Fargo had no "validly assigned mortgage and therefore no valid right of entry under a power of sale." (Id. ¶ 177).

It is undisputed that Wells Fargo transferred ownership of the Property to Fannie Mae on February 20, 2009. (Compl. ¶ 59; Def. Ans. ¶ 59). On February 26, 2009, plaintiffs' counsel allegedly contacted Harmon to inform it that an independent third party was interested in purchasing the Property. (Compl. ¶ 86). However, on April 15, 2009, Harmon notified Akar that Fannie Mae was presently unwilling to entertain any offers to purchase the Property, and that it did not intend to place the Property on the market until it was vacant. (Id. ¶ 87). Shortly thereafter, on April 27, 2009, the plaintiffs were served with a 72 Hour Notice to Quit and Vacate the Premises, which was signed by an attorney at Harmon. (Compl. ¶ 88; Def. Ans. ¶ 88).

Akar continued to negotiate with Harmon and Fannie Mae concerning the possibility of selling the Property to an independent third party. (Compl. ¶ 89). As of

October 2009, when the third-party offer was submitted, the Property allegedly had an appraised value of $280,000. (Id. ¶ 91). However, the plaintiffs claim that Fannie Mae refused to sell the Property for less than the full amount owed on the loan, which was $361,831.49 as of December 10, 2009. (Id. ¶ 89). According to the plaintiffs, neither Wells Fargo nor Fannie Mae has provided Akar with an accounting of the difference between the loan amount of $300,000 and the price at which Wells Fargo purchased the Property at the foreclosure sale. (Id. ¶ 90). Nor have they explained the basis for Fannie Mae's assertion as to the amount that remains owing on the loan. (Id.).

Additional factual details relevant to this court's analysis are provided below where appropriate.

## III. ANALYSIS

Wells Fargo and Fannie Mae have moved for judgment on the pleadings with respect to each of the claims asserted against them in the Second Amended Verified Complaint. Those claims include claims against both defendants for wrongful foreclosure in violation of Mass. Gen. Laws ch. 244, § 14 and the duty of good faith and reasonable diligence (Counts III-IV), intentional infliction of emotional distress (Count XI), and unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") (Count XII). They also include claims against Wells Fargo for violation of the federal Truth in Lending Act (Count I), breach of contract (Count V), promissory estoppel (Count VI), wrongful foreclosure based on bad faith (Count VII), intentional misrepresentation (Count VIII), negligent misrepresentation (Count IX), and civil trespass

(Count X).  For the reasons that follow, this court recommends that Fannie Mae's motion be allowed with respect to all of the claims against it, and that Wells Fargo's motion be allowed with respect to Counts I, III, IV and X, but otherwise denied.

## A.    <u>Standard of Review</u>

The defendants are seeking judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The legal standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard for evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 54-55 (1st Cir. 2006).  Thus, when confronted with a motion for judgment on the pleadings, the court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion . . . and draw all reasonable inferences in [that party's] favor." <u>Curran</u>, 509 F.3d at 43.  Dismissal is only appropriate if the pleadings, so viewed, fail to support a "plausible entitlement to relief." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir. 2009).  "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'

-15-

Such conclusory statements are 'not entitled to the assumption of truth.'" <u>Id.</u> (quoting

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (additional citations

omitted)). "Second, only a complaint that states a plausible claim for relief" will survive

a motion for judgment on the pleadings. <u>Id.</u> (citations omitted). "This second principle

recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the

reviewing court to draw on its judicial experience and common sense.' '[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

entitled to relief.'" <u>Id.</u> (quoting <u>Ashcroft</u>, 129 S. Ct. at 1950) (additional citations

omitted; alterations in original).

### B.     Count I: Alleged Violation of Truth in Lending Act Against Wells Fargo

In Count I, the plaintiffs claim that Wells Fargo violated the Truth in Lending Act,

15 U.S.C. § 1601 <u>et</u> <u>seq.</u> ("TILA"), by failing to disclose the relevant terms of the

promissory note and mortgage that Akar entered into in connection with her purchase of

the Property. Wells Fargo contends that this claim is time-barred, and that it cannot be

held liable under TILA in any event because it did not originate the loan and had no

obligation to provide Akar with any of the necessary lending disclosures. (WF Mem. at

8-10).[6] This court finds that while in certain circumstances an assignee of a loan may be

_____

[6] "WF Mem." refers to "Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion for Judgment on the Pleadings" (Docket No. 39).

held liable for failing to comply with TILA's disclosure requirements, the plaintiffs have failed to allege sufficient facts to support such a claim here. Therefore, this court recommends that Wells Fargo's motion for judgment on the pleadings be allowed with respect to Count I.[7]

"'TILA requires creditors to disclose, clearly and accurately, all the material terms of consumer credit transactions.'" Ording v. BAC Home Loans Servicing, LP, Civil Action No. 10-10670-MBB, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011) (slip op.) (quoting McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st Cir. 2007)). Wells Fargo argues that it cannot be deemed a "creditor" under TILA because it did not originate the loan to Akar. (WF Mem. at 9). Under TILA, the term "creditor" is defined in relevant part as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f) (emphasis added). Wells Fargo contends that Pride is the entity to whom the debt at issue here was "initially payable." (WF Mem. at 9).

---

[7] Because this court finds that the plaintiffs have failed to allege sufficient facts to support a claim against Wells Fargo under TILA, it is unnecessary to determine whether that claim also is barred by the statute of limitations.

The plaintiffs do not dispute Wells Fargo's assertion that it does not meet the definition of a "creditor," but they point out that under 15 U.S.C. § 1641 of TILA, liability can still can exist if the defendant is an assignee of a creditor. (Pl. Opp. to WF Mot. at 19-20).[8]  Specifically, § 1641(a) provides that

> any civil action for a violation of [TILA] which may be brought against a creditor may be maintained against any assignee of such creditor <u>only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where an assignment was involuntary</u>.  For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by [TILA].

15 U.S.C. § 1641(a) (emphasis added).  Thus, Wells Fargo, as an assignee of the loan from Pride to Akar, may be held liable for Pride's failure to make disclosures required by TILA, but only if such violations were "apparent on the face of the disclosure statement" or the assignment was involuntary.  <u>Ritter v. Durand Chevrolet, Inc.</u>, 932 F. Supp. 32, 35 (D. Mass. 1996).

In the instant case, the plaintiffs have not alleged any facts to support Wells Fargo's liability as an assignee under TILA.  As an initial matter, the plaintiffs fail to identify what if any disclosures Pride failed to make in connection with the origination of

---

[8]  "Pl. Opp. to WF Mot." refers to the "Plaintiff's Opposition to Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings" (Docket No. 22).  Although the plaintiffs' opposition was filed in response to an earlier motion for judgment on the pleadings, which was withdrawn, this court agreed to consider the opposition in connection with Wells Fargo's pending motion for judgment on the pleadings.  (<u>See</u> Docket Entry dated 04/15/2011).

Akar's loan. While the plaintiffs allege generally that "Pride Mortgage, LLP never warned Mrs. Akar of the true costs of the Premises[,]" they have failed to allege any facts indicating what disclosures were made with respect to the loan at issue or why any such disclosures were inadequate under TILA. (See Compl. ¶¶ 42-43). Furthermore, the plaintiffs have not alleged any facts showing that any violation of TILA was apparent on the face of the loan documents or, if not apparent, that the loan was involuntarily assigned to Wells Fargo. Accordingly, the plaintiffs have failed to allege a plausible entitlement to relief under TILA. See Cheche v. Wittstat Title & Escrow Co., LLC, 723 F. Supp. 2d 851, 856 (E.D. Va. 2010) (finding that plaintiff failed to state a claim for assignee liability under TILA where plaintiff failed to offer any factual allegations showing that "any alleged violation of the TILA was apparent on the face of the disclosure statement or that the loan was involuntarily assigned").

### C. Counts III and IV: Claims for Wrongful Foreclosure Against Wells Fargo and Fannie Mae

In Counts III and IV of their complaint, the plaintiffs have asserted claims against Wells Fargo and Fannie Mae for wrongful foreclosure. Specifically, in Count III, they claim that the foreclosure sale and transfer of the Property to Fannie Mae should be deemed void or voidable as against public policy because Wells Fargo did not possess a written assignment of Akar's mortgage at the time the foreclosure proceedings commenced. (See Compl. ¶¶ 107-112). Similarly, in Count IV, the plaintiffs claim that Wells Fargo acted in bad faith by commencing the foreclosure proceedings without a

valid assignment of the mortgage, and that therefore the foreclosure sale is void or voidable. (See id. ¶¶ 114-119). Although the plaintiffs do not claim that Fannie Mae participated in the foreclosure proceedings, they argue that their request to have the transfer of the Property to Fannie Mae deemed void renders that defendant is a necessary party under Fed. R. Civ. P. 19(a)(1). (Pl. Opp. to FM Mot. at 5-6).[9]

For the reasons that follow, this court finds that Wells Fargo had the legal authority to foreclose on the Property on February 10, 2009. Therefore, the defendants are entitled to judgment on the pleadings with respect to Counts III and IV.

## The Statutory Power of Sale

"Where a mortgage grants a mortgage holder the power of sale, as did . . . the [Akar] mortgage[], it includes by reference the power of sale set out in G.L. c. 183, § 21, and further regulated by G.L. ch. 244, §§ 11-17C." U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 646, 941 N.E.2d 40, 49 (2011). Pursuant to the statutory scheme,

> after a mortgagor defaults in the performance of the underlying note, the mortgage holder may sell the property at a public auction and convey the property to the purchaser in fee simple, "and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity."

---

[9] "Pl. Opp. to FM Mot." refers to the "Plaintiff's Opposition to Federal National Mortgage Association a/k/a Fannie Mae's Mot[i]on for Judgment on the Pleadings" (Docket No. 21). Although the plaintiffs' opposition was filed in response to an earlier motion by Fannie Mae for judgment on the pleadings, which was withdrawn, this court agreed to consider the opposition in connection with Fannie Mae's present motion for judgment on the pleadings. (See Docket Entry dated 04/15/2011).

Id. (quoting Mass. Gen. Laws ch. 183, § 21).  Due to the "substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight," Massachusetts law requires that "'one who sells under a power [of sale] must follow strictly its terms.  If he fails to do so there is no valid execution of the power, and the sale is wholly void.'"  Id. (quoting Moore v. Dick, 187 Mass. 207, 211, 72 N.E. 967, 968 (1905)) (alteration in original).

"One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose."  Id. at 647, 941 N.E.2d at 50.  Under Mass. Gen. Laws ch. 183, § 21, "[t]he 'statutory power of sale' can be exercised by 'the mortgagee or his executors, administrators, successors or assigns.'"  Id. (quoting Mass. Gen. Laws. ch. 183, § 21).  Similarly, under Mass. Gen. Laws ch. 244, § 14,

> "[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person" is empowered to exercise the statutory power of sale.  Any effort to foreclose by a party lacking "jurisdiction and authority" to carry out a foreclosure under these statutes is void.

Id. (quoting Mass. Gen. Laws ch. 244, § 14).  Thus, "only a present holder of the mortgage is authorized to foreclose on the mortgaged property[.]"  Id. at 648, 941 N.E.2d at 50.

"A related statutory requirement that must be strictly adhered to in a foreclosure by power of sale is the notice requirement articulated in G.L. c. 244, § 14."  Id.  Pursuant to that provision,

> "no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale," advance notice of the foreclosure sale has been provided to the mortgagor, to other interested parties, and by publication in a newspaper published in the town where the mortgaged land lies or of general circulation in that town.

Id. (quoting Mass. Gen. Laws ch. 244, § 14). "Because only a present holder of the mortgage is authorized to foreclose on the mortgaged property, and because the mortgagor is entitled to know who is foreclosing and selling the property," the holder of the mortgage must be identified in the notice of sale, and any failure to do so "may render . . . the foreclosure sale void." Id. at 648, 941 N.E.2d at 50. The key, therefore, "is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale . . . ." Id. at 651, 941 N.E.2d at 53.

### Wells Fargo's Authority to Foreclose

Here, the complaint demonstrates that Wells Fargo was the holder of Akar's mortgage at the time of the notice and subsequent foreclosure sale of the Property. Specifically, the plaintiffs allege that Akar's mortgage was assigned to Wells Fargo on September 22, 2008, and that the assignment was recorded in the Registry of Deeds on September 24, 2008. (Compl. ¶ 63 and Ex. 9 thereto). They also allege that subsequent to the assignment, in January 2009, Wells Fargo's counsel notified Akar of Wells Fargo's intent to foreclose on the Property on February 10, 2009 by way of a public auction. (Compl., Ex. 6). Wells Fargo's counsel also arranged for notices of the foreclosure auction to be published in the local newspaper. (Compl. ¶ 56 and Ex. 7 thereto). Those

notices identified Wells Fargo as the holder of the mortgage for the Property.  (Compl., Ex. 7).

"Massachusetts law requires only that the assignment of mortgage be executed and recorded prior to the publication of the notice of sale."  Kiah v. Aurora Loan Servs., LLC, Civil Action No. 10-40161-FDS, 2011 WL 841282, at *6 (D. Mass. Mar. 4, 2011). Because Wells Fargo had a valid assignment of Akar's mortgage at the time of the notice of sale, it had the authority to conduct the foreclosure sale on February 10, 2009 under Massachusetts law.[10]

The plaintiffs' argument that the foreclosure proceedings commenced in April 2008, when Wells Fargo informed Akar of its intent to foreclose on the Property and filed its complaint in the Land Court, does not alter this court's conclusion that the foreclosure proceedings were valid.  The Land Court proceeding was filed pursuant to the Servicemembers Civil Relief Act ("Servicemembers Act"), "which restricts foreclosures against active duty members of the uniformed services."  U.S. Bank Nat'l Ass'n, 458 Mass. at 642, 941 N.E.2d at 47.  Under Massachusetts law, "actions taken to comply with the [Servicemembers Act] . . . are not in themselves mortgage foreclosure proceedings in

_____

[10]  The fact that Harmon sent Akar the first Notice of Wells Fargo's intent to foreclose prior to the assignment of the mortgage from MERS to Wells Fargo does not alter this court's conclusion that the foreclosure proceedings were valid.  As detailed herein, no foreclosure sale occurred on October 21, 2008 pursuant to that Notice.  Furthermore, after Wells Fargo obtained the assignment from MERS, the defendants began the foreclosure proceedings anew by issuing Akar a new Notice of Wells Fargo's intent to foreclose and by publicizing the February 10, 2009 foreclosure sale in the local newspaper.  (See Compl. ¶¶ 53, 56 and Exs. 6 and 7 thereto).

any ordinary sense.  Rather, they occur independently of the actual foreclosure itself and of any judicial proceedings determinative of the general validity of the foreclosure." Beaton v. Land Court, 367 Mass. 385, 390, 326 N.E.2d 302, 305 (1975).  See also U.S. Bank Nat'l Ass'n, 458 Mass. at 642 n.13, 941 N.E.2d at 47 n.13 (explaining that "a mortgage holder is required to go to court to obtain a judgment declaring that the mortgagor is not a beneficiary of the Servicemembers Act before proceeding to foreclosure" (emphasis added)).  As the Supreme Judicial Court of Massachusetts has further explained, the Servicemembers Act, as amended,

> simply establishes procedures whereby mortgagees, in addition to taking all steps necessary to foreclose, can make certain that there will be no cloud on the title following the foreclosure as a result of an interested party having been in, or just released from, military service and thus under the protective umbrella of the [Servicemembers Act].  If a foreclosure were otherwise properly made, failure to comply with the [Servicemembers Act] would not render the foreclosure invalid as to anyone not entitled to the protection of that act.

Beaton, 367 Mass. at 390, 326 N.E.2d at 305 (citations omitted).  Accordingly, the Land Court action did not mark the commencement of foreclosure proceedings, and the fact that Wells Fargo did not obtain a valid assignment of Akar's mortgage until September 2009, five months after the Land Court action was filed, does not render the foreclosure sale unlawful.

### D.    Count V: Claim for Breach of Contract Against Wells Fargo

Wells Fargo also has moved for judgment on the pleadings with respect to the plaintiffs' claim for breach of contract set forth in Count V.  Therein, the plaintiffs allege

that Wells Fargo's verbal assurances to Akar that her home would not be foreclosed upon while her application for a loan modification remained pending constituted an enforceable agreement between the parties. They further claim that Wells Fargo breached that agreement by foreclosing on the Property before it had acted on Akar's application. (Compl. ¶¶ 120-27). Wells Fargo contends that the breach of contract claim is barred by the Massachusetts Statute of Frauds. This court disagrees, and recommends that Wells Fargo's motion for judgment on the pleadings be denied with respect to Count V.

The Statute of Frauds provides in relevant part as follows:

> No action shall be brought ... [u]pon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them ... [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

Mass. Gen. Laws ch. 259, § 1. Therefore, as a general matter, "a contract for the sale of land must comply with the Statute of Frauds[,]" and "[a]n oral modification will not be enforced if it results in a 'rewriting' of the contract or significantly changes the parties' obligations." Mack v. Wells Fargo Bank, N.A., No. WOCV201002228, 2011 WL 4837261, at *6 (Mass. Super. Aug. 31, 2011) (citing Rosenfeld v. Standard Bottling & Extracts Co., 232 Mass. 239, 244-45, 122 N.E. 299, 300 (1919)). However, an oral modification which does not rewrite the contract, but merely alters the timing or mode of performance of the contract, is enforceable under Massachusetts law. See McKinley Invs., Inc. v. Middleborough Land, LLC, 62 Mass. App. Ct. 616, 619-21, 818 N.E.2d

627, 629-30 (2004) (holding that modifications concerning time for performance, elimination of tolling period, and additions to contract price were not required to be in writing and did not render contract unenforceable under the Statute of Frauds).

In the instant case, the alleged agreement to postpone the foreclosure sale while Akar's loan modification application remained pending sought only to alter the timing in which Wells Fargo could exercise its rights under the mortgage contract, but did not alter the mortgagee's "right, title and interest" in the mortgage. See Siegel v. Knott, 316 Mass. 526, 528-29, 55 N.E.2d 889, 890-91 (1944) (where "[t]he oral agreement merely changed the method by which the plaintiffs had undertaken to pay their mortgage indebtedness[,]" but did not affect the mortgagee's "right, title and interest" in the mortgage, the agreement was not unenforceable under the Statute of Frauds). Therefore, Wells Fargo has not shown that the agreement was unenforceable on account of the Statute of Frauds.

### E.     Count VI: Claim for Promissory Estoppel Against Wells Fargo

In Count VI, the plaintiffs have asserted a claim against Wells Fargo for promissory estoppel based on the defendant's alleged assurances that the foreclosure sale would not take place before it had acted upon Akar's loan modification application. For the reasons that follow, this court recommends that Wells Fargo's motion be denied with respect to this claim as well.

The doctrine of promissory estoppel "holds that a promise given without consideration is binding when the promissor should reasonably expect to induce action or forbearance if injustice can be avoided only by enforcement of the promise." Trifiro v.

-26-

New York Life Ins. Co., 845 F.2d 30, 31 (1st Cir. 1988). In order to state such a claim "under Massachusetts law, 'a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.'" Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (quoting Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002)).

Wells Fargo contends, as an initial matter, that the claim of promissory estoppel must fail because "the allegations of the Complaint plainly show that Wells Fargo fully performed under the alleged 'promise' and did not foreclose until it informed Plaintiffs that their loan modification had been denied." (WF Mem. at 11). Specifically, Wells Fargo relies on allegations showing that on February 5, 2009, five days before the foreclosure sale, the defendant's customer service representative informed plaintiffs' counsel that Akar's application for a loan modification had been denied and that the file had been closed. (Id.). Thus, according to the defendant, Wells Fargo fulfilled any promise to postpone the sale while the application remained pending. (Id.).

This court finds that Wells Fargo's argument relies on a misreading of the complaint. Although the plaintiffs do allege that such a communication took place on February 5, 2009, they also allege that their counsel resubmitted Akar's loan modification application that same day, and was told by the defendant that it would "be earmarked as a priority due to the impending auction." (Compl. ¶ 83). Moreover, when viewed in the

light most favorable to the plaintiffs, the pleadings show that following the resubmission of Akar's application on February 5, 2009, Wells Fargo continued to assure Akar that the foreclosure sale would be postponed if no decision had been made with respect to a modification.  (See id. ¶ 84).  The plaintiffs claim that despite the alleged assurances, the foreclosure sale was carried out before any action had been taken on Akar's application.  (Id.).  Therefore, the plaintiffs have alleged that Wells Fargo failed to perform on its promise.

Wells Fargo also argues that the plaintiffs have failed to allege facts showing that they reasonably relied on the defendant's promises.  In particular, the defendant contends that any reliance on such promises was unreasonable because Wells Fargo's statements conflicted with the written notice to Akar informing her that the foreclosure sale would take place on or after February 10, 2009, and with the notices of sale that were published in the Stoughton Journal or three separate occasions.  (WF Mem. at 12-13).  Wells Fargo relies on the principle that "[w]hen a person acts in a way contrary to his own acknowl-edged understanding of the facts, his acts must be deemed unreasonable as a matter of law."  Trifiro, 845 F.2d at 33 (finding petitioner's reliance on single oral statement made by respondent's officer to third party unreasonable as a matter of law where petitioner received a letter from respondent contradicting earlier oral statement, petitioner provided written acknowledgment as to contents of respondent's letter, and petitioner failed to investigate reason for conflict).  Here, however, the plaintiffs allege that both parties acknowledged that the foreclosure sale was scheduled for February 10, 2009, but that

Wells Fargo employees repeatedly stated that the sale would be postponed until the defendant had acted upon the loan modification application. Thus, the allegations show that despite the written notices of the sale, the parties had a mutual understanding that no such sale would occur until Wells Fargo had considered the application. Under the circumstances alleged here, this court cannot conclude that Akar's reliance on the alleged promises was unreasonable as a matter of law.

Finally, Wells Fargo contends that the plaintiffs have not alleged facts showing that there is any injustice that could be avoided only by the enforcement of Wells Fargo's promise. Specifically, Wells Fargo argues that it had a legal right to foreclose on the Property. It also argues that the plaintiffs have not alleged facts showing what action Akar could have taken to stop the foreclosure if she had not relied on the defendant's promise, or why Akar did not take any such action prior to the foreclosure date. (WF Mem. at 13-14). By their promissory estoppel claim, the plaintiffs are not challenging Wells Fargo's legal authority to carry out the foreclosure, but only the timing of the foreclosure based on the alleged promises of its employees. The plaintiffs have alleged that Akar relied on those promises by not seeking other potential ways to prevent or delay the foreclosure, such as filing for bankruptcy. (Compl. ¶ 85). Furthermore, it is clear from the complaint that Akar did not file for bankruptcy or take any other action to prevent or postpone the foreclosure prior to the sale because she believed the defendant's representations that the foreclosure sale would be postponed pending a decision on a loan

modification.  Accordingly, Wells Fargo has not shown that it is entitled to a judgment on the pleadings with respect to Count VI.

F.     Counts VII: Claim Against Wells Fargo for
       Wrongful Foreclosure Based on Bad Faith

Wells Fargo also has moved for a judgment in its favor with respect to Count VII, in which the plaintiffs have asserted a claim against Wells Fargo for wrongful foreclosure based on bad faith.  The defendant contends that Count VII is "premised on the notion that Wells Fargo did not possess a written assignment of mortgage from the original mortgagee, MERS."  (WF Mem. at 5).  It further contends that this claim must fail because Wells Fargo had the legal authority to conduct the foreclosure.  (Id.).

Wells Fargo has misinterpreted the nature of the plaintiffs' claim.  Contrary to the defendant's understanding, the plaintiffs in Count VII have not based their claim of bad faith on Wells Fargo's alleged failure to obtain a valid assignment of the mortgage.  That is the basis of their claim in Count IV, discussed supra.  Rather, in Count VII, the plaintiffs are claiming that the foreclosure was wrongful because Wells Fargo "failed to act in a manner consistent with its contractual and common law obligations of good faith and fair dealing."  (Compl. ¶ 143).  In particular, they allege that Wells Fargo failed to comply with its promises to consider Akar's application for a loan modification before carrying out the foreclosure; failed to respond in a timely and appropriate manner to inquiries from Akar's counsel regarding the status of the application and other options to avoid foreclosure; "failed to perform loan servicing functions consistent with its

responsibilities to customers;" "failed to properly supervise its agents and employees"; and added improper fees and charges to Akar's account. (Compl. ¶¶ 135-42). For the reasons detailed below, this court finds that at this stage in the litigation, the plaintiffs have stated a plausible claim for relief.

"In Massachusetts, every contract implies good faith and fair dealing by the parties in its performance." Tufankjian v. Rockland Trust Co., 57 Mass. App. Ct. 173, 177, 782 N.E.2d 1, 5 (2003) (footnote omitted). This implied covenant provides "'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" Id. (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471, 583 N.E.2d 806, 820 (1991)). Although "[t]he covenant may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship," it aims "to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004).

In the present case, the plaintiffs have alleged sufficient facts to show that Akar had a reasonable expectation that Wells Fargo would delay the foreclosure sale until after it had considered her loan modification application. Therefore, assuming the parties entered into an oral contract regarding the timing of the sale, as the plaintiffs claim, the complaint shows that Wells Fargo deprived Akar of the fruits of that contract by failing to fulfill its promise. Accordingly, the plaintiffs have stated a claim for relief.

To the extent the plaintiffs also are claiming that Wells Fargo's actions violated the mortgagee's duty to act in good faith, they should have an opportunity to pursue that claim as well. Under Massachusetts law, "[t]he mortgagee must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." Williams v. Resolution GGF OY, 417 Mass. 377, 382-83, 630 N.E.2d 581, 584 (1994) (quotations and citations omitted). "The mortgagee's duty is more exacting when it becomes the buyer of the property." Id. at 383, 630 N.E.2d at 584. As the Massachusetts Supreme Judicial Court has explained,

> When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal. Consistent with these requirements, the mortgagee has a duty to obtain for the property as large a price as possible.

Id. (quotations and citations omitted).

The plaintiffs have alleged facts sufficient to show that Wells Fargo failed to act in good faith. For example, but without limitation, the plaintiffs have alleged that the defendant mishandled Akar's proposed short sale by delaying its consideration of her proposal for so long that the sale fell through. (See Compl. ¶¶ 69-78). Additionally, they have alleged that Wells Fargo failed to act in good faith by selling the Property to itself in the foreclosure for less than the fair market value. (Id. ¶ 60). The question whether the plaintiffs may be able to prevail on these claims should be determined after the parties have had an opportunity to engage in discovery. Therefore, this court recommends that Wells Fargo's motion be denied with respect to Count VII.

### G. Counts VIII and IX: Claims for Intentional and Negligent Misrepresentation Against Wells Fargo

The plaintiffs have asserted claims against Wells Fargo, in Counts VIII and IX of the complaint, for intentional and negligent misrepresentation based on the defendant's alleged promises to postpone the foreclosure sale pending a decision on Akar's request for a loan modification. In order to prove a claim for either intentional or negligent misrepresentation, the plaintiff must establish "that he reasonably relied on [the defendant's] misrepresentation." Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 523, 536 N.E.2d 344, 349 (1989), cert. denied, 493 U.S. 894, 110 S. Ct. 242, 107 L. Ed. 2d 192 (1989). Wells Fargo argues that the claims for intentional and negligent misrepresentation should be dismissed because, as in the case of their promissory estoppel claim, the plaintiffs have failed to allege reasonable reliance. (WF Mem. at 14-15). For the reasons detailed above with respect to Count VI, Wells Fargo has not shown that the plaintiffs' allegations are insufficient to show reasonable reliance. Rather, the plaintiffs have asserted sufficient facts to establish that to her detriment, Akar did not take any other steps to prevent the foreclosure from going forward. Therefore, this court recommends that Wells Fargo's motion be denied with respect to Counts VIII and IX.

### H. Count X: Trespass Claim Against Wells Fargo

In Count X, the plaintiffs are seeking to hold Wells Fargo liable for civil trespass. The plaintiffs claim that Wells Fargo committed the alleged trespass on February 10, 2009, when its representatives entered the Property to conduct the foreclosure sale

"without having a validly assigned mortgage and therefore no valid right of entry under a power of sale." (Compl. ¶ 177). They also claim that Wells Fargo should be held liable for trespass because its actions in advertising the foreclosure sale in the newspaper, and listing the Property on a "bank-owned" website, even though it had no valid assignment of the mortgage, "caused numerous individuals to enter upon the [Property] on or before February 10, 2009 purportedly to inspect the [Property]." (Compl. ¶¶ 174-76). This court recommends that the defendant's motion for judgment on the pleadings be allowed with respect to this Count.

"To support an action of trespass . . . it is necessary to prove the actual possession of the plaintiff, and an illegal entry by the defendant." New England Box Co. v. C & R Constr. Co., 313 Mass. 696, 707, 49 N.E.2d 121, 128 (1943) (quotations and citations omitted). As described above with respect to Counts III and IV, Wells Fargo had a valid assignment of the mortgage and the legal authority to conduct the foreclosure sale on February 10, 2009 under Massachusetts law. Therefore, its entry onto the Property for purposes of conducting the sale was legal and did not constitute a trespass. Furthermore, under Massachusetts law, Wells Fargo was required to provide advance notice of the foreclosure sale, and to publish such notice in the newspaper. See U.S. Bank Nat'l Assoc., 458 Mass. at 647, 941 N.E.2d at 50 (describing statutory notice requirements set forth in Mass. Gen. Laws ch. 244, § 14). Accordingly, Wells Fargo cannot be held liable for trespass based on the theory that its advertisements caused third parties to enter onto the Property, and Count X of the complaint should be dismissed.

## I.     Count XI: Claim for Intentional Infliction of Emotional Distress  Against Wells Fargo and Fannie Mae

The plaintiffs claim, in Count XI of the complaint, that the conduct of Wells Fargo and Fannie Mae in connection with the foreclosure of the Property gives rise to liability for intentional infliction of emotional distress.  Both of the defendants have moved for judgment on the pleadings with respect to this claim on the grounds that the plaintiffs have not alleged any extreme and outrageous conduct on the part of the defendants, and on the grounds that the mere act of conducting a foreclosure sale after a mortgagor defaults on his loan obligation cannot support a claim for intentional infliction of emotional distress.  (WF Mem. at 16-17; FM Mem. at 5-7).[11]  Because the plaintiffs have failed to allege any facts to suggest that Fannie Mae's actions were extreme and outrageous, this court recommends that Fannie Mae's motion be allowed with respect to Count XI.  However, this court recommends that Wells Fargo's motion be denied as to this claim.

In order to state a claim for intentional infliction of emotional distress, the plaintiffs must allege "'(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff[s'] distress; and (4) that the plaintiff[s] suffered severe distress.'" O'Neil v. DaimlerChrysler Corp.,

---

[11]  "FM Mem." refers to "Federal National Mortgage Association a/k/a Fannie Mae's Memorandum of Law in Support of Its Motion for Judgment on the Pleadings" (Docket No. 41).

538 F. Supp. 2d 304, 320 (D. Mass. 2008) (quoting <u>Sena v. Commonwealth</u>, 417 Mass. 250, 263-64, 629 N.E.2d 986, 993 (1994)).  Moreover, "'[t]o be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community.  Liability cannot be founded upon mere insults, threats, or annoyances.'"  <u>Id.</u> (quoting <u>Sena</u>, 417 Mass. at 264, 629 N.E.2d at 993).

**<u>The Plaintiffs' Claim Against Fannie Mae</u>**

The plaintiffs have not alleged any facts that would support a claim against Fannie Mae for intentional infliction of emotional distress.  As described above, the complaint shows that ownership of the Property was transferred to Fannie Mae following a legally authorized foreclosure sale.  Therefore, to the extent the plaintiffs are attempting to base their claim on Fannie Mae's acquisition of the Property, they have failed to show that Fannie Mae's conduct was improper, much less extreme and outrageous.  To the extent the plaintiffs are attempting to base their claim on Fannie Mae's refusal to consider an offer to purchase the Property until the plaintiffs had vacated the premises, its refusal to sell the Property for an amount that was less than the full amount that Fannie Mae believed was owed on the mortgage, or its failure to provide the plaintiffs with an accounting, they have not shown that Fannie Mae, as the lawful, third-party owner of the Property, breached any duties or obligations to the plaintiffs or acted in a manner that was otherwise improper.  Nor have they alleged facts from which a factfinder could conclude that by exercising its rights of ownership, Fannie Mae did anything that could be

considered "beyond the bounds of decency" or "utterly intolerable in a civilized community." See In re Fernandes, 446 B.R. 6, 10-11 (Bankr. D. Mass. 2011) (finding that defendant's conduct in carrying out foreclosure sale could not constitute "extreme and outrageous conduct" where defendant merely "intended to exercise what it believed was its right to foreclose"). Therefore, this court recommends that the claim against Fannie Mae for intentional infliction of emotional distress be dismissed.

### The Claim Against Wells Fargo

This court finds that Wells Fargo's motion presents a closer question. The defendant argues that its alleged actions in carrying out a lawful foreclosure do not support a claim that it acted intentionally to inflict emotional distress or that its conduct was extreme and outrageous. (See WF Mem. at 16-17). In support of its argument, Wells Fargo relies on cases in which the courts have dismissed claims for intentional infliction of emotional distress based on wrongful foreclosure or negligence in the context of a foreclosure sale. See In re Fernandes, 446 B.R. at 10-11 (cited by defendant) (dismissing claim for intentional infliction of emotional distress based on allegations that defendant did not hold the mortgage when it conducted foreclosure sale, and that mortgage was unenforceable due to defects in its origination); In re Bailey, 437 B.R. 721, 730 (Bankr. D. Mass. 2010) (cited by defendant) (dismissing claim for intentional infliction of emotional distress based on allegations that defendant conducted foreclosure sale without adequate evidence that it was the holder of the mortgage because allegations were insufficient to show that defendant's conduct was intentional); Keane v. Countrywide

Home Loans, Inc., No. 10-10751, 2011 WL 870782, at *1 (D. Mass. Mar. 11, 2011) (cited by defendant) (to support a claim for intentional infliction of emotional distress, plaintiff must allege "[s]omething more" than mere deficiencies in the mortgage process). However, Wells Fargo has not addressed the plaintiffs' argument that their claim is based on Wells Fargo's allegedly false promises that the foreclosure sale would not occur until a decision was made on Akar's loan modification request. (See Pl. Opp. to WF Mot. at 17-18). Nor has the defendant cited any cases showing that repeated misrepresentations such as those alleged in the complaint cannot support a claim for intentional infliction of emotional distress.

This court finds that the facts set forth in the complaint regarding Wells Fargo's alleged misrepresentations are sufficient to show that the defendant should have known that its conduct would cause Akar and the other members of her household to suffer emotional distress. This court also finds that at this juncture in the litigation, the plaintiffs should have an opportunity to take discovery in order to show that under the circumstances of this case, the defendant's conduct in making repeated promises that it failed to fulfill could be considered extreme and outrageous. Therefore, this court recommends that Wells Fargo's motion for judgment on the pleadings be denied with respect to the claim for intentional infliction of emotional distress.

### J.    Count XII: Claim Against Wells Fargo and Fannie Mae for Unfair and Deceptive Trade Practices Under Mass. Gen. Laws ch. 93A

In Count XII of their complaint, the plaintiffs claim that Wells Fargo and Fannie Mae engaged in unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A §§ 2 and 9 ("Chapter 93A").  Each of the defendants has moved for judgment on the pleadings with respect to this claim.  For the reasons that follow, this court recommends that Fannie Mae's motion be allowed, but that Wells Fargo's motion be denied as to Count XII.

### Chapter 93A Claim Against Fannie Mae

Fannie Mae argues, in support of its motion, that "Plaintiffs' 93A claim against Fannie Mae should be dismissed because they failed to serve a 93A demand letter before commencing the current litigation."  (FM Mem. at 7).  Chapter 93A provides in relevant part that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."  Mass. Gen. Laws ch. 93A, § 9(3).  "The statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'"  Rodi v. S. New England Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 333 N.E.2d 202, 204 (1975)).  "Furthermore, 'as a special element' of the cause of action, it must be alleged in the plaintiff's complaint."  Id. (quoting Entrialgo, 368 Mass. at 812, 333 N.E.2d at 204).

In the present case, the record demonstrates that the plaintiffs sent demand letters to the defendants over ten months after filing the lawsuit, but more than thirty days before

moving to amend their complaint to allege Chapter 93A claims against Fannie Mae and

Wells Fargo. (See Compl., Exs. 10 & 13; Mot. to Am. (Docket No. 31)). The plaintiffs

also attached copies of their demand letters to their amended complaint. (Compl., Exs.

10 & 13). Massachusetts courts have allowed plaintiffs to amend their complaint to add a

claim under Chapter 93A, despite not having delivered the demand letter to the defendant

prior to filing the initial suit, where the letter has served the purposes of the demand

requirement in encouraging negotiation and settlement. See, e.g., Tarpey v. Crescent

Ridge Dairy, Inc., 47 Mass. App. Ct. 380, 391-92, 713 N.E.2d 975, 983 (1999) (allowing

plaintiff to amend complaint and add claim under Chapter 93A, despite not having

delivered demand letter prior to commencing suit, where the purposes of the demand

letter requirement were satisfied). Accordingly, the plaintiffs' failure to deliver a demand

letter to Fannie Mae prior to the start of the litigation is not necessarily fatal to their claim

under Chapter 93A.

Nevertheless, even if the plaintiffs' actions in issuing the demand letters more than

thirty days prior to amending their complaint were sufficient to meet the procedural

requirements of Chapter 93A, this court finds that their claim against Fannie Mae should

be dismissed on the merits. In order to state a claim under Chapter 93A, "some form of

deceptive or unfair conduct must be alleged." States Res. Corp. v. The Architectural

Team, Inc., 433 F.3d 73, 84 (1st Cir. 2005). "'[A] practice or act will be unfair under

[Chapter 93A] if it is (1) within the penumbra of a common law, statutory, or other

established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or

(3) causes substantial injury to competitors or other business people.'" <u>Morrison v. Toys</u> <u>"R" Us, Inc.</u>, 441 Mass. 451, 457, 806 N.E.2d 388, 392 (2004) (quoting <u>Heller Fin. v.</u> <u>Ins. Co. of N. Am.</u>, 410 Mass. 400, 408, 573 N.E.2d 8, 12-13 (1991)). "A practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted." <u>Duclersaint v. Fed. Nat'l Mortg. Ass'n</u>, 427 Mass. 809, 814, 696 N.E.2d 536, 540 (1998). In the instant case, the plaintiffs have not alleged that Fannie Mae's conduct was unfair or deceptive.

As described above, the plaintiffs have alleged that Fannie Mae acquired owner-ship of the Property from Wells Fargo following a legally authorized foreclosure sale, and that it subsequently did nothing more than exercise its rights as a third party owner of the Property. The plaintiffs nevertheless argue that they have stated a claim against Fannie Mae under Chapter 93A because "[a] refusal of a mortgagee to provide an accounting or to pay a surplus from a foreclosure sale is a violation of G.L. ch. 93A." (Pl. Opp. to FM Mot. at 8). However, the plaintiffs' own allegations establish that Fannie Mae was never a mortgagee of the Property, and they have not presented any basis for holding Fannie Mae liable under Chapter 93A for the mortgagee's failure to carry out its obligations to

the mortgagor.[12]  Accordingly, this court recommends that Fannie Mae's motion for judgment on the pleadings be allowed as to Count XII.

## Chapter 93A Claim Against Wells Fargo

Wells Fargo's  arguments for the dismissal of the Chapter 93A claim against it mirror those made by Fannie Mae.  Thus, the defendant argues as an initial matter that the plaintiffs failed to comply with the procedural requirements of Chapter 93A by failing to serve a demand letter "**before** commencing the current litigation."  (WF Mem. at 17 (emphasis in original)).  However, as described above, the plaintiffs' failure to deliver a demand letter to Wells Fargo prior to the commencement of the litigation does not necessarily compel the conclusion that their 93A claim should be dismissed.  This court recommends that the plaintiffs have an opportunity to show that, under the circumstances of this case, their letter was "adequate and satisfied the purpose of the demand requirement" even though it was issued after the litigation was filed.  See S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 92 (D. Mass. 2007) (finding that plaintiffs in federal litigation complied with procedural requirements of Chapter 93A where demand letters satisfied the purpose of the demand requirement despite having been filed in an earlier state court action).

---

[12]  Under Mass. Gen. Laws ch. 183, § 27, "a mortgagee must give a mortgagor any surplus generated at a foreclosure sale."  Duclersaint, 427 Mass. at 811, 696 N.E.2d at 538. Additionally, the mortgagee is responsible for providing the mortgagor with an "accounting of the disposition of the proceeds arising from a sale under the power of sale[.]"  Mass. Gen. Laws ch. 183, § 27.  However, nothing in the statute imposes any such obligations upon a third-party owner of foreclosed property.

This court also finds that the Chapter 93A claim against Wells Fargo should not be dismissed on procedural grounds because there is a question as to whether the demand letter requirements are even applicable to Wells Fargo. The demand letter provisions of Chapter 93A provide in relevant part that "[t]he demand requirements . . . shall not apply if . . . the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth . . . ." Mass. Gen. Laws ch. 93A, § 9(3). In their complaint, the plaintiffs have alleged that "Wells Fargo does not maintain a place of business or keep assets within the Commonwealth of Massachusetts[.]" (Compl. ¶ 191). Moreover, while the defendant's ownership of Akar's mortgage may have constituted an asset located in Massachusetts, see In re Anderson, No. 04-44554-JBR, 2006 WL 2786974, at *1 (Bankr. D. Mass. Sept. 26, 2006) (finding that holder of mortgage secured by property located in Massachusetts has "at least one as[s]et located here in Massachusetts"), the plaintiffs have alleged that ownership of the Property was trans-ferred to Fannie Mae on February 20, 2009, nearly ten months before the plaintiffs filed this action. (Compl. ¶ 59). Therefore, the plaintiffs have alleged sufficient facts to show that they were not required to issue a demand letter before filing suit against Wells Fargo under Chapter 93A.

Wells Fargo argues that the plaintiffs claim nevertheless must fail on the merits because they have not alleged any facts to show that Wells Fargo's conduct was unfair or deceptive. (WF Mem. at 20). This court disagrees. As detailed above, the plaintiffs have alleged that Akar relied on Wells Fargo's false assurances that it would postpone the

foreclosure sale pending consideration of her application for a loan modification by not

seeking other potential ways to prevent or delay the foreclosure. Based on those

allegations, Wells Fargo's conduct "reasonably could be found to have caused the

plaintiff to act differently than [s]he otherwise would have acted." <u>Duclersaint</u>, 427

Mass. at 814, 696 N.E. at 540. <u>See also Rodi</u>, 389 F.3d at 20 (finding that "plaintiff's

allegations of fraudulent misrepresentation state a colorable claim for relief under

Chapter 93A"). Accordingly, the plaintiffs have alleged that Wells Fargo's actions were

deceptive within the meaning of Chapter 93A.

### IV. <u>CONCLUSION</u>

For all the reasons described above, this court recommends to the District Judge to

whom this case is assigned that "Federal National Mortgage Association a/k/a Fannie

Mae's Motion for Judgment on the Pleadings" (Docket No. 40) be ALLOWED, and that

all of the Counts against Fannie Mae be dismissed. This court also recommends that

"Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings" (Docket No. 38) be

ALLOWED IN PART and DENIED IN PART. Specifically, this court recommends that

Counts I, III, IV and X against Wells Fargo be dismissed, but that Wells Fargo's motion

be denied with respect to Counts V, VI, VII, VIII, IX, XI and XII.[13]

---

[13] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommenda- tion. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly

-44-

_/ s / Judith Gail Dein_____
Judith Gail Dein
U.S. Magistrate Judge

---

indicated that failure to comply with this Rule shall preclude further appellate review.  <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 275 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 604-605 (1st Cir. 1980); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>see</u> <u>also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  <u>Accord</u> <u>Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1, 3-4 (1st Cir. 1999); <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-51 (1st Cir. 1994); <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 4 (1st Cir. 1998).